FENNER ALDRICH

*v.*

ROSWELL E. GOODELL.

1. CHATTEL MORTGAGE — *when sale under it presumed to have been according to power.*  Where a party had given a chattel mortgage upon the furniture in a hotel, and afterwards, with the consent of the mortgagee, sold the same to another party, who assumed to pay a portion of the debt to the mortgagee, and the mortgagor gave the mortgagee his notes for the balance due, including an additional indebtedness secured by mortgage on real estate, and on bill to foreclose this latter mortgage by an assignee, the mortgagor set up in defense the sale of the furniture by the mortgagee under the chattel mortgage, and asked for an account of the proceeds of such sale, with a view to have the overplus, if any, credited upon the notes sought to be collected by foreclosure, there being no irregularity charged in the sale under the mortgage, it was *held* not incumbent on the complainant to produce in evidence the chattel mortgage, as it would be presumed that it was an ordinary mortgage with the ordinary power of sale, and that the sale was made in accordance with the power.

2. ASSIGNOR — *when liable without diligence.* Where, at the maturity of the first of two assigned promissory notes, one of the makers has left the State, and the other maker is insolvent, and at the time of the maturity of the second, both of the makers have left the State, these facts will excuse any diligence of the holder by suit, and the liability of the indorsers will become fixed without such suit against the makers.

3. COLLATERAL SECURITY — *damages for neglect to enforce.* Where a party who has assigned promissory notes secured by mortgage upon real estate, seeks to recover or have allowed him damages for a neglect to enforce payment by foreclosure, or otherwise, he must show that he has sustained damage in consequence of such neglect. The party receiving such notes can be liable only for the actual damages occasioned thereby.

APPEAL from the Circuit Court of Will county; the Hon. JOSIAH McROBERTS, Judge, presiding.

Mr. GEORGE S. HOUSE, for the appellant.

Mr. J. R. DOOLITTLE, Jr., for the appellee.

Mr. JUSTICE SHELDON delivered the opinion of the Court:

This was a bill in chancery, filed on the 10th day of July, 1872, by Goodell, the appellee, to foreclose a mortgage executed by Aldrich, the appellant, to Joel A. Matteson, September 1, 1858, to secure the payment of two notes of Aldrich, of the same date, of $506.30 each, payable to the order of said Matteson, in six and twelve months from date, with interest at ten per cent. The notes were transferred to Goodell, the appellee, after maturity.

Aldrich set up in his answer that, on September 1, 1857, he purchased of Matteson the furniture of the St. Nicholas hotel, in Springfield; that, as part payment for the same, he gave to Matteson his four promissory notes, three for the sum of $1,-829.90 each, due, one July 1, 1858, one July 1, 1859, and one July 1, 1860, all with interest at ten per cent, payable annually, and the other for $2,000, due in fifteen months, interest as above, to secure the payment of which a chattel mortgage was given on the furniture purchased.

That afterward, on the 1st day of September, 1858, Aldrich, with the consent of Matteson, sold out the furniture to Blakesly and Cummings, who paid for the same as follows: They assumed and agreed to pay to Matteson the three notes last above named, with interest thereon from September 1, 1858, and in addition, transferred to Aldrich two notes of $1,421.90 each, dated April 13, 1858, made by James M. and A. K. Cory, payable to Blakesly one and two years after date, with interest at seven per cent, secured by a mortgage on real estate in Clinton county, in this State, and also indorsed by Blakesly and Cummings.

That Aldrich delivered these two Cory notes to Matteson as collateral security for the payment of the above named note for $2,000.

That, at the same time of this transfer, Aldrich, in a settlement had with Matteson, was found indebted to the latter, over and above the notes assumed by Blakesly and Cummings, in the sum of $1,012.60, for which Aldrich gave the notes named in the mortgage sought to be foreclosed. That, subsequently, Matteson sold the furniture under the chattel mortgage and realized the full amount secured thereby, and assumed to be paid by Blakesly and Cummings, with a considerable sum in addition. That Matteson then held in his hands the two Cory notes, which he had either collected, or might have done by the exercise of reasonable diligence; that Matteson should be held to account for their amount, and that, upon such accounting, Matteson would be shown to have been largely indebted to Aldrich at the time of the transfer of the mortgage sought to be foreclosed.

There was a decree of foreclosure in the court below in favor of Goodell for the sum of $2,629.95, from which Aldrich appealed.

The matters of defense set up in the answer are two claims against Matteson, the assignor of the notes and mortgage to Goodell, one on account of an excess from the proceeds of the

sale of the furniture under the chattel mortgage, over and above the notes it was given to secure ; the other, that Matteson is chargeable with the amount of the two Cory notes received as collateral security, on account of negligence in respect to them.

The two notes involved in this foreclosure suit were given for the balance of an indebtedness found due to Matteson upon the settlement of an account between him and Aldrich, two items of which account were, the first one of the four notes given for the furniture and secured by the chattel mortgage thereon, and the interest up to September 1, 1858, on the three other notes.    The point is made by appellee that the claims against Matteson, set up in the answer, are not admissible in defense against this suit of foreclosure by Goodell.    But, as we regard the claims as unfounded, we shall not stop to consider that question.

The proof shows that the net proceeds of the sale of the furniture under the chattel mortgage did not satisfy the lien upon it of the last three of the notes given for the furniture, by the sum of $1,682.85.    This completely rebuts the first ground of defense as it is set up in the answer, showing that no excess arose upon that sale.    The sale took place December 16, 1859.

The claim is put forth in the argument, that it was incumbent on the complainant to produce the chattel mortgage, in order that the court might see just what power was given by it, and to show the manner of the sale, and that it was in compliance with the power; and as no express proof of this kind was made, and as Cummings testified that he considered the property to be of the value he and Blakesly paid for it, that the mortgagee should be charged with that value, without regard to the price the property sold for.    This is not the case of one asserting a right under a chattel mortgage sale, but of one admitting and charging such a sale to have been made, and calling for an account of the proceeds.    It is to be taken, under the circumstances, that it was the ordinary chattel mortgage,

with the ordinary power of sale, and that the power was followed in making the sale, especially as the answer does not set up any irregularity in the sale.

It is objected that the evidence fails to show that all the furniture taken possession of under the mortgage was sold.

It appears to us to show very satisfactorily, that not only the entire furniture of the hotel was sold, but that, in addition, some $1,500 or $2,000 of other furniture, which Blakesly and Cummings had put into the hotel, and not subject to the mortgage, was sold, and Aldrich credited with the proceeds. The expenses of the sale were some $900, and exception is taken to some of the items; but, rejecting the whole expenses, the proceeds then would not have satisfied the lien of the last three above named notes, and there would have been no overplus.

The negligence charged in respect to the two Cory notes taken by Matteson as collateral security, whereby it is claimed that he has made them his own, and is chargeable therewith, is, a failure to fix the liability of the indorsers upon the notes, Blakesly and Cummings. These notes, with the mortgage accompanying them, were assigned by Aldrich to Matteson, as collateral security, before maturity. They bore upon them the indorsements of Blakesly and Cummings.

It is claimed that these indorsers have become discharged by the neglect to prosecute a suit against the makers of the notes, the Corys, and to foreclose the accompanying mortgage.

The evidence shows, that at the time of the maturity of the first note, one of the Corys had left the State, and that they both were insolvent; and that at the time of the maturity of the second note, both of them had left the State.

These facts, under the statute, excused any diligence to collect by suit against the makers, and the liability of the indorsers became fixed without such suit.

In excuse for not taking any proceeding upon the mortgage, appellee attempted to make proof of a prior mortgage, and that upon a foreclosure proceeding thereunder, the land had been

sold for the amount of the prior mortgage debt, in satisfaction of the same. Objection was made by appellant to the sufficiency of the proof to establish the existence of a prior mortgage, or the validity of the foreclosure proceedings by reason of want of jurisdiction of the mortgagor from a defective notice of publication.

We deem it unnecessary to discuss the question of this proof, for the reason that, admitting the force of the objection, and laying out of view a prior mortgage, we see no ground of liability for not foreclosing the Cory mortgage, because it has not been shown that any damage resulted therefrom. For neglect to foreclose that mortgage, there would be a liability only for the damages caused by such neglect. None here appear. The proof shows that the mortgage was a purchase money mortgage, given by the Corys to Blakesly on two hundred and fifty acres of land in Clinton county; that the consideration of the purchase was $7,000; the amount of the two notes the mortgage was given to secure is $2,843.80. For aught that appears, the land is ample security for the debt, and the fair inference from the evidence is, that it is so. The want of previous foreclosure of the mortgage does not appear to have occasioned damage. There appearing no sufficient ground for disturbing the decree, it must be affirmed.

*Decree affirmed.*